# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CECILIA SOGBUYI-WHITNEY, and ANNETTE GABAY, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GARDNER RESOURCES CONSULTING, INC., CAREMARK PHC LLC, CVS HEALTH SOLUTIONS LLC, and CORAM ALTERNATE SITE SERVICES INC., <br><br> Defendants. | Civil Action No. 1:22-cv-10935 <br><br><br><br><br><br> **COLLECTIVE ACTION COMPLAINT** |

## COLLECTIVE ACTION COMPLAINT

1. Plaintiff Cecilia Sogbuyi-Whitney ("Sogbuyi-Whitney") and Annette Gabay ("Gabay"), on behalf of themselves and all others similarly situated (collectively "Plaintiffs") through their undersigned counsel, file this Collective Action Complaint against Defendant Gardner Resources Consulting Inc., and Defendants Caremark PHC, LLC, CVS Health Solutions LLC, and CORAM Alternate Site Services Inc. dba CORAM CVS Specialty Infusion Services (hereinafter "CVS") (collectively "Defendants"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on information and belief as to the acts of others.

## PRELIMINARY STATEMENT

2. This is an action brought pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), seeking payment of unpaid wages. Plaintiffs, on behalf of themselves and others similarly situated, also seek liquidated damages for the failure to pay overtime wages, as well as attorneys' fees and costs.

1

3.     Plaintiffs allege that they and other similarly situated quality assurance consultants were knowingly and improperly classified by Gardner Resources Consulting and CVS as exempt employees, and, as a result, did not receive compensation for hours worked in excess of forty (40) in a workweek in violation of the FLSA. Plaintiffs also allege that Gardner Resources Consulting and CVS failed to pay time-and-a-half for hours worked beyond forty per week (on the rare occasion when such hours were compensated at all). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

4.     Jurisdiction over Plaintiffs' FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391, because Gardner Resources Consulting is a Massachusetts limited liability company with its principal place of business within this judicial district, and therefore a substantial part of the events giving rise to Plaintiff's claims took place in this district.

## PARTIES

6.     Plaintiff Cecilia Sogbuyi-Whitney ("Sogbuyi-Whitney") is an individual residing in Katy, Texas.

7.     Sogbuyi-Whitney worked for Defendants as an Epic Quality Assurance consultant, between November 2021 and May 2022.

8.     Pursuant to 29 U.S.C. § 216(b), Sogbuyi-Whitney has consented in writing to participate in this action. *See* Ex. A.

9.     Plaintiff Annette Gabay ("Gabay") is an individual residing in Monroe, North

2

Carolina.

10. Gabay worked for Defendants as an Epic Quality Assurance consultant between October 2021 and May 2022.

11. 29 U.S.C. § 216(b), Gabay has consented in writing to participate in this action. *See* Ex. B.

12. Defendant Gardner Resources Consulting is a Massachusetts Limited Liability Company with its principal place of business at 110 Cedar Street, Wellesley, MA 02481. It can be served through its registered agent for process, Stephen M. Nahaczewski, 10 Rowes Wharf PH03 Boston MA 02110.

13. Defendant Gardner Resources Consulting employs individuals engaged in commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

14. Defendant Gardner Resources Consulting's annual gross volume of business done exceeds $500,000.

15. Defendant CVS Health Solutions LLC is a Delaware limited liability company with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895. Defendant CVS Health Solutions LLC does business across the United States, including substantial business in the Commonwealth of Massachusetts and has locations in Massachusetts. It can be served through its registered agent for process, CT Corporation System, 155 Federal Street Suite 700 Boston, MA 02110.

16. Defendant CVS Health Solutions LLC employs individuals engaged in commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

17. Defendant CVS Health Solutions LLC's annual gross volume of business done exceeds $500,000.

18. Defendant Caremark PHC, LLC is a Delaware limited liability company with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895. Defendant CVS Caremark PHC, LLC does business across the United States, including substantial business in the Commonwealth of Massachusetts and has locations in Massachusetts. It can be served through its registered agent for process, CT Corporation System, 155 Federal Street Suite 700 Boston, MA 02110.

19. Defendant Caremark PHC, LLC employs individuals engaged in commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

20. Defendant Caremark PHC, LLC's annual gross volume of business done exceeds $500,000.

21. Defendant CORAM Alternate Site Services Inc. dba CORAM CVS Specialty Infusion Services, is a Delaware corporation with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895. Defendant CORAM Alternate Site Services Inc. does business across the United States, including substantial business in the Commonwealth of Massachusetts and has locations in Massachusetts. It can be served through its registered agent for process, CT Corporation System, 155 Federal Street Suite 700 Boston, MA 02110.

22. Defendant CORAM Alternate Site Services Inc. employs individuals engaged in commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

23. Defendant CORAM Alternate Site Services Inc.'s annual gross volume of business done exceeds $500,000.

## COLLECTIVE ACTION DEFINITION

24. Plaintiffs bring Count I of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following class of potential FLSA opt-in litigants:

> All individuals who worked for Gardner Resources Consulting and CVS providing Epic quality assurance consulting in the United States from July 2019 to the present and were classified as exempt employees (the "FLSA Collective").

25. Plaintiffs reserve the right to redefine the Class prior to notice or class certification, and thereafter, as necessary.

## FACTS

26. Gardner Resources Consulting is a staffing agency for Information Technology and Life Sciences companies in need of workers. Defendant Gardner Resources Consulting provided quality assurance consultants (or "QA consultants") to CVS to assist with testing of its Epic electronic medical recordkeeping (ERM) systems, and in particular, its billing codes.

27. Defendants jointly employed QA consultants, such as Plaintiffs, who performed work for CVS remotely throughout the United States.

28. Plaintiffs signed a contract with Defendant Gardner Resources Consulting and were paid by Gardner Resources Consulting. They were provided with laptops with which to perform their work. Plaintiffs' work was directed by CVS employees who dictated what tasks they were assigned and how many hours they could bill per week. Plaintiffs were issued CVS email addresses and had to enter their hours and the results of their work on CVS's internal systems. Plaintiffs' hours had to be approved by both CVS and Gardner.

29. Plaintiffs ran scenarios in CVS's Epic electronic medical recordkeeping system, utilizing user stories provided to them by CVS. For instance, Plaintiff would be assigned to a particular medical therapy and insurer and would log into the Epic recordkeeping system, create a fictional patient, assign the particular insurance, and log each phase of the fictional patient's care, including creating an appointment, creating a referral, adding therapies and medications, billing, and running claims. Plaintiffs would then provide specified information to CVS to determine if the medication, therapy and services were billed appropriately. If errors occurred, Plaintiffs were not responsible for fixing those errors; instead, Plaintiffs merely reported them to their superiors. A separate team of individuals was responsible for fixing any errors and "building" the Epic system for CVS. Plaintiffs' role was limited to performing rote quality assurance work assigned to them by CVS.

30. Plaintiffs were classified by Defendants as exempt employees. Plaintiffs were paid an hourly rate, typically the range of $40 to $55 per hour. For instance, Gabay was paid $48 per hour and Sogbuyi-Whitney was paid $50 per hour. Although Plaintiffs routinely worked more than 40 and as many as 70 hours a week, they did not receive <u>any</u> compensation for hours worked in excess of 40 per week. On the one occasion when Defendants permitted some Plaintiffs to record more than 40 hours of work in a given week on their timesheet, they were paid at their regular hourly rate and did not receive 1.5x their hourly rate for those hours in excess of forty per week.

31. Defendants knew or should have known that Plaintiffs were working more than forty hours per week. Some Plaintiffs complained that they were being asked to perform more work than it was possible to complete in forty hours, but they were still told they could only bill for forty hours and that they had to complete their tasks as assigned. Furthermore, Defendants could observe when Plaintiffs were logged into their system and the time stamps when they were

completing their work, which made clear that they were working far in excess of forty hours per week. Additionally, Plaintiffs routinely attended meetings toward the end of their workday and reported their progress, and Defendants were aware that Plaintiffs had not yet completed their work for the day, and thus, would be working late into the evening.

**Plaintiffs and Collective Action Members are not Exempt as "Computer Employees" or "Highly Compensated Employees" under the FLSA**

32. Plaintiffs and Collective Action Members performed quality assurance in connection with Epic electronic medical recordkeeping system utilized by the CVS Defendants. Plaintiffs have no specialized training or certification in computer programming, software documentation or analysis.

33. Plaintiffs and Collective Action Members were not working as, nor were they similarly skilled as, computer systems analysts, computer programmers, or software engineers, as defined in 29 C.F.R. § 541.400(a).

34. Plaintiffs' and Collective Action Members' primary duties consisted of running different fictional patient scenarios provided by CVS through the Epic software and noting any errors in billing codes. Plaintiffs' and Collective Action Members' primary duties did not include the higher skills of the "application of systems analysis techniques and procedures," pursuant to 29 C.F.R. § 541.400(b)(1). Plaintiffs and Collective Action Members did not analyze, consult or determine hardware, software programs or any system functional specifications for Defendant's clients. *See id.*

35. Plaintiffs and Collective Action Members also did not consult with CVS to determine or recommend hardware specifications. Plaintiff and Collective Action Members did not design, document, test, develop, create, or modify a computer system or program, as that work is defined in 29 C.F.R. § 541.400(b)(2).

36. While Plaintiffs' and Collective Action Members' work involved the use of computers, they were not "primarily engaged in computer systems analysis and programming." U.S. Dept. of Labor, Wage & Hour Div., Fact Sheet #17E: Exemption for Employees in Computer-Related Occupations under the Fair Labor Standards Act (FLSA). Plaintiff and Collective Action Members simply logged into the Epic electronic medical recordkeeping system and logged fictional patients' care, then provided the results to CVS.

37. Plaintiffs and Collective Action Members did not perform the duties of an exempt executive, administrative, or professional employee, as defined in 29 U.S.C. § 213(a)(1). Plaintiffs and Collective Action Members were paid on an hourly basis and provided quality assurance of the electronic medical recordkeeping system at the direction of CVS employees and recorded the results.

38. Plaintiffs and Collective Action Members did not have a role in managing CVS or Gardner Resource Consulting's operations; they did not regularly direct the work of other CVS or Gardner Resource Consulting employees (with the exception of "team leads" who are excluded from this Collective), and they did not hire or fire other employees.

39. Plaintiffs and Collective Action Members did not perform work related to management and/or general business operations of CVS or Gardner Resource Consulting. Plaintiffs and Collective Action members did not exercise discretion as to matters of significance – they were assigned to perform certain scenarios in the Epic ERM, were required to follow a set schedule, and were given specific parameters within which to perform their work. Plaintiffs were assigned specific tasks on specific timelines, and they did not have discretion as to when or how to complete them.

40. Plaintiffs and Collective Action Members did not perform work requiring advanced knowledge in a field of science or learning. They were not required to have a specific educational background or degree and their work involved basic quality assurance of the electronic medical recordkeeping system. Although Plaintiffs had to be certified in the use of Epic, an electronic medical recordkeeping software (EMR) – essentially a digital patient chart – Plaintiffs generally did not hold any degrees in computer programming, computer science, or the like. Indeed, Plaintiff Sogbuyi-Whitney's degrees are in journalism and communications respectively, and her background is in training hospital staff in the use of Epic electronic medical recordkeeping software.

**Defendant Willfully Violated the FLSA**

41. Defendants had no reasonable basis to believe that Plaintiffs and the members of the FLSA Collective were exempt from the requirements of the FLSA. Rather, Defendants either knew or acted with reckless disregard of clearly applicable FLSA provisions in classifying Plaintiffs and the FLSA Collective Members as exempt employees. Such willfulness is demonstrated by, or may be reasonably inferred from, Defendants' actions and/or failures to act, including the following:

   a. At all times relevant hereto, Defendants had actual knowledge that Plaintiffs and the FLSA Collective worked overtime;

   b. At all times relevant hereto, Defendants knew that they did not pay Plaintiffs and the FLSA Collective Members one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week;

   c. Defendants were aware of the nature of the work performed by consultants;

   d. Defendants knew and understood that they were subject to the wage requirements

      of the FLSA as "employers" under 29 U.S.C. § 203(d);

e. Defendants lacked any reasonable or good faith basis to believe that QA consultants fell within any exemption from the overtime requirements of the FLSA. Rather, Defendant deliberately misclassified its consultants as exempt in order to avoid paying them overtime compensation to which they were entitled;

f. At all times relevant hereto, Defendant was aware that it would (and, in fact did) benefit financially by failing to pay Plaintiffs and the FLSA Collective one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week and failing to pay Plaintiffs at all for worked performed beyond forty (40) hours per week; and

g. Thus, Defendants had (and have) a strong financial motive to violate the requirements of the FLSA by misclassifying QA consultants as exempt employees.

42. Based upon the foregoing, Defendants were cognizant that, or recklessly disregarded whether, their conduct violated the FLSA.

### COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

43. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

44. Plaintiffs desire to pursue their FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

45. Plaintiffs and the FLSA Collective Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals have been subject to Defendant's common business and compensation practices as described herein, and, as a result of such practices, have not been paid wages, including the legally mandated overtime compensation

for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common misclassification, compensation and payroll practices.

46. The FLSA requires non-exempt hourly employees to be compensated at a rate of 1.5 times the regular hourly rate for all hours worked over 40 in a week.

47. Defendants misclassified Plaintiffs and FLSA Collective Members as exempt employees, and, as a result, failed to provide them overtime compensation for hours worked in excess of 40 a week.

48. The similarly situated employees are known to Defendants, are readily identifiable, and can easily be located through Defendant's business and human resources records.

49. Defendants employ many FLSA Collective Members throughout the United States. Plaintiffs believe there are between fifty (50) and one-hundred (100) such individuals who were employed as QA analysts by Defendants at the same time as Plaintiffs, if not more. These similarly situated employees may be readily notified of this action through U.S. Mail and/or other means, and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest) and attorneys' fees and costs under the FLSA.

**COUNT I**
**FLSA – Overtime Compensation**
**(On Behalf of Plaintiff and the FLSA Collective)**

50. All previous paragraphs are incorporated as though fully set forth herein.

51. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d).

52. Defendants are subject to the wage requirements of the FLSA because Defendants

are "employers" under 29 U.S.C. § 203(d).

53. At all relevant times, Defendants have been "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

54. During all relevant times, Plaintiffs and the FLSA Collective Members have been covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

55. Plaintiffs and the FLSA Collective Members are not exempt from the requirements of the FLSA.

56. Plaintiffs and the FLSA Collective Members are entitled to be paid for all hours worked and are entitled to be paid overtime compensation for hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

57. Defendants, pursuant to its policies and practices, failed and refused to pay overtime compensation to Plaintiffs and the FLSA Collective members for their overtime hours worked by misclassifying Plaintiffs and the FLSA Collective as exempt employees.

58. Defendants knowingly failed to compensate Plaintiffs and the FLSA Collective Members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

59. Furthermore, Defendants knowingly failed to compensate Plaintiffs for all hours worked and required that Plaintiffs bill for fewer hours than they actually worked.

60. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

61. In violating the FLSA, on information and belief, Defendants did not have any good faith basis to rely on any legal opinion or advice to the contrary.

## JURY TRIAL

62. Plaintiffs demand a trial by jury for all issues of act.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs seek the following relief on behalf of themselves and the Classes:

a. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Collective;

c. An order appointing Plaintiffs' attorneys as attorneys for the Collective;

d. Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

e. Liquidated damages to the fullest extent permitted under the law;

f. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

g. Such other and further relief as this Court deems just and proper.

Dated: June 15, 2022

Respectfully submitted,

CECILIA SOGBUYI-WHITNEY, and
ANNETTE GABAY
 individually and on behalf of others similarly situated,

/s/ *Harold L. Lichten*_____
Harold Lichten, MA BBO # 549689
Adelaide H. Pagano, MA BBO # 690518
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800

Facsimile: (617) 994-5801
apagano@llrlaw.com
hlichten@llrlaw.com

*Attorneys for Plaintiffs
and the Proposed Collective*