## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CECILIA SOGBUYI-WHITNEY, and ANNETTE GABAY, individually and on behalf of all Others similarly situated, <br><br>     Plaintiffs, <br><br>       v. <br><br> GARDNER RESOURCES CONSULTING, LLC, CAREMARK PHC LLC, CVS HEALTH SOLUTIONS LLC, and CORAM ALTERNATE SITE SERVICES INC., <br><br>     Defendants. | Civil Action No.: 1:22-cv-10935 |

## PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

**I.**　　**INTRODUCTION**

Plaintiffs Cecilia Sogbuyi-Whitney and Annette Gabay ("Plaintiffs"), individually and on behalf of the Settlement Collective defined below, hereby submit their unopposed motion for approval of their FLSA Settlement Agreement with Defendants Gardner Resources Consulting, LLC ("Gardner"), Caremark PHC LLC, CVS Health Solutions LLC, and CORAM Alternate Site Services Inc. (collectively, "Defendants").[1] This settlement resolves the claims of Plaintiffs and the 8 Settlement Collective Members under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") for a total of $150,000.00. As detailed below, this proposed resolution of the Plaintiffs' and Settlement Collective's FLSA claims is fair and reasonable and warrants judicial

---

[1]　　The Settlement Agreement is attached hereto as Exhibit A.

1

approval. Defendants do not oppose this Motion.

Because the proposed settlement is a fair and reasonable resolution of a *bona fide* dispute, Plaintiffs respectfully request that the Court enter an order:

1.  Granting final approval of the Parties' FLSA Collective Action Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act.

2.  Granting final certification to the Settlement Collective pursuant to 29 U.S.C. § 216(b), for settlement purposes only:

    > Plaintiff and the Opt-In Plaintiffs (*i.e.*, the individuals who as of December 16, 2022 have filed an Opt-In Consent Form with the Court in *Sogbuyi-Whitney, et al. v. Gardner Resources Consulting, LLC, et al.*, No. 1:22-cv-10935 (D. Mass.), and who are identified in the Settlement Agreement) (the "Settlement Collective").

3.  Approving the Gross Settlement Amount of $150,000.00 in resolution of this action.

4.  Approving the proposed service award in the amount of $5,000.00 each from the Gross Settlement Amount to Plaintiffs Cecilia Sogbuyi-Whitney and Annette Gabay for their service to the Settlement Collective.

5.  Approving Plaintiff's unopposed request for attorneys' fees and costs, in the amount of $50,000.00 (one-third of the common fund), which is to be paid from the Gross Settlement Amount.

6.  Dismissing this action with prejudice upon Court approval of the settlement.

7.  Reserving exclusive and continuing jurisdiction over this action, the named Plaintiffs, and the Settlement Collective for purposes of supervising the implementation and enforcement of the Settlement Agreement, this Order, and all settlement administration matters.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Sogbuyi-Whitney and Gabay filed the above-captioned lawsuit in the United States District Court for the District of Massachusetts on June 15, 2022, alleging that Defendants misclassified their Epic quality assurance consultants ("QA consultants") as exempt from overtime compensation and denied them overtime compensation when they worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C.§ 201, *et seq.* (Dkt.

1). Specifically, Plaintiffs alleged that the QA consultants signed a contract with Defendant Gardner to work for the CVS Defendants, assisting with the implementation and testing of Epic electronic medical recordkeeping (ERM) systems. Plaintiffs allege that although they and the other QA consultants routinely worked in excess of forty (40) hours a week, they were not paid overtime compensation for hours worked in excess of forty (40) hours per week, as required by the FLSA. Plaintiffs also allege that they were jointly employed by Defendant Gardner and the CVS Defendants.

Defendants deny that any members of the Settlement Collective were misclassified, or that any of these individuals were not paid for all hours worked. (Dkt. 23.) Defendants maintain that they have, at all times, complied with all relevant federal and state wage laws with respect to all of their employees including the members of the Settlement Collective, and are agreeing to settle this case solely to avoid the additional time and expense of protracted litigation.

Following the filing of Plaintiffs' Complaint, opt-ins Alex Aria, Aliza Whiteside, Virginia Ezenwa, Kristina Kosho, and Toochukwu Ifoma Mbah opted into the case. (Dkts. 5, 6, 11, 15).

On July 26, 2022, Plaintiffs moved for conditional certification and for notice to be issued pursuant to 29 U.S.C. § 216(b). (Dkt. 16.) However, by agreement of the Parties, Plaintiffs subsequently withdrew that motion without prejudice on August 2, 2022 to allow for conferral with Defendants. (Dkt. 19.) Counsel for the Parties conferred and agreed on the form of notice to be sent to potential plaintiffs informing them of their right to opt in to the case, and on October 21, 2022, Plaintiffs filed an Assented-to Motion to Approve Form of Opt-in Notice to Be Sent to Potential Plaintiffs. (Dkt. 33.) Following issuance of notice, opt-ins Cyril Emiko, Kareem

Muhammad, Alexis Wright, and Demetrius Stroud also opted into this case.[2] (Dkts. 35, 36, 37.).

At the close of the opt-in period on December 16, 2022, the Parties agreed to engage in settlement discussions. In an effort to facilitate settlement and determine whether mediation was necessary, the Parties engaged in a period of discovery focused on determining the number of overtime hours worked by each of the opt-ins. Defendants provided data as to each of the opt-ins' activities in the Epic ERM testing software during the relevant time period. Plaintiffs, in turn, worked with each of the opt-ins to provide a detailed estimate of their overtime hours for each week that they worked for Defendants during the relevant time period. The Parties also exchanged written discovery requests and document production.

Plaintiffs' Counsel conducted a detailed damages analysis based on the detailed overtime estimates provided by each of the opt-ins in this case. From approximately May 25, 2023 until June 29, 2023, the Parties engaged in settlement discussions, and reached a tentative settlement agreement on June 29, 2023. Dkt. 44. After continued settlement negotiations, the Parties reached an agreement memorialized in a long form, the essential terms of which are set forth below. The Plaintiffs have reviewed and executed the Settlement Agreement.

## III.    <u>TERMS OF THE SETTLEMENT AGREEMENT</u>

The Settlement Agreement provides for a Gross Settlement amount of $150,000.00. Settlement Agreement ¶ 1. The Gross Settlement Amount includes sums to cover a service award to Plaintiffs Cecilia Sogbuyi-Whitney and Annette Gabay in the amount of $10,000.00 (i.e., $5,000 per person) and attorneys' fees and costs in the amount of one-third of the gross settlement amount, or $50,000.00. *Id*.; Lichten Decl. ¶¶ 26-39. The Gross Settlement Amount resolves the claims of

---

[2]    As noted above, *see supra* n.2, Demetrius Stroud withdrew from the Collective Action prior to this settlement. Plaintiffs' Counsel has separately filed a stipulation of dismissal on his behalf.

Plaintiffs and the Settlement Collective, consisting of individuals who opted into this case – a total of 10 people, including the two named plaintiffs.[3]

Within fourteen (14) calendar days of the Court's order approving the Settlement, Gardner will establish a settlement fund in the amount of $150,000. Settlement Agreement ¶ 1. Payments to members of the Settlement Collective will be made within fourteen (14) days of the funding of the settlement and will be paid as half wages on a W-2 and half liquidated damages on a 1099. Specifically, Gardner shall make payments by check to each member of the Settlement Collective in proportionate amounts determined by Plaintiffs' Counsel for the wage portion of their settlement awards, according to the formula discussed below and utilizing mailing information provided by Plaintiffs' Counsel. *Id.* ¶ 1(a)(i). At that time, Gardner shall also pay Plaintiffs' Counsel $100,000 by check, half of which shall be remitted to the members of the Settlement Collective for the liquidated damages portion of their settlement awards in proportionate amounts determined by Plaintiffs' Counsel according to the formula discussed below. *Id.* ¶ 1(a)(ii). The remaining $50,000 shall be for attorneys' fees and costs. *Id.*

Calculation of Settlement Awards are based on the estimated hours of overtime worked by each Settlement Collective Member during the Relevant Time Period, which each individual member of the Settlement Collective determined and provided to Plaintiffs' Counsel in the process of negotiating the Settlement Agreement. Each Settlement Collective Member shall receive no less than a minimum Settlement Award of $1,231.61. Lichten Decl. ¶ 23.

In exchange for the consideration set forth in this Settlement Agreement, the Collective Members agree to release the Defendants, and all of their present, former and future affiliates,

---

[3]     Although 9 employees originally opted into this collective action, one opt-in, Demetrius Stroud, withdrew from the Collective Action prior to this settlement. Plaintiffs' Counsel has separately filed a stipulation of dismissal on his behalf.

divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or Defendants' or the foregoing entities' present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans) assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities, acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with them (collectively, the "Releasees") from and against any and all local, state, and federal claims that were or could have been raised in the Collective Action or which the Collective Members ever had against the Releasees at any time prior to the effective date of the Settlement Agreement. Settlement Agreement ¶ 3. Additionally, the Collective Members agree to release, remise, and discharge Gardner alone from or against any and all claims that have been raised in a separate action, alleging race discrimination, entitled *Cecilia Sogbuyi-Whitney, et al. v. Caremark PHC LLC, et al.*, Civil Action No. 1:23-cv-00055-MSM-LDA (D.R.I. filed Feb. 6, 2023). *Id.* § 4. Gardner was not named as a defendant in that action.

IV.     **ARGUMENT**

As discussed below, because the Settlement reached by the Parties represents a fair and reasonable resolution of a *bona fide* dispute, the Court should enter the accompanying proposed order approving the Settlement of the Settlement Collective Members' FLSA claims; finally certifying the proposed collective for purposes of settlement; approving a service award to Plaintiffs Cecilia Sogbuyi-Whitney and Annette Gabay in the amount of $5,000.00 each, and approving the award of attorneys' fees of one-third of the Gross Settlement Amount ($50,000).

A.     **Standard for Settlement Approval under the FLSA.**

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207

of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be . . . ." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Cheeks v. Freeport Pancake H., Inc.*, 796 F.3d 199, 206 (2d Cir. 2015); *Lynn's Food Stores, Inc. v. U.S., U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982). "Requiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Cheeks*, 796 F.3d at 206 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

**B.    The Settlement is Fair and Reasonable Resolution of a *Bona Fide* Dispute Under the FLSA**

"The Court may approve the settlement upon a finding that all parties to the action have agreed to it, and that it represents a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1355). The settlement in this case satisfies these criteria. In this case, a *bona fide* dispute exists regarding Plaintiffs' FLSA claims. Plaintiffs have alleged that they and the Settlement Collective Members were misclassified by Defendants as exempt, and, as a result, were not paid the overtime premium for hours worked in excess of 40 hours per week. (Dkt. 1.)  Defendants deny these allegations, and they maintain that the Settlement Collective Members were properly compensated. (Dkt. 23.) This is sufficient to establish the

existence of a *bona fide* dispute. *See, e.g., Singleton*, 146 F. Supp. 3d at 261 ("the Court agrees that the parties' proposed settlement represents a fair and reasonable resolution of this dispute, and that the settlement was reached through arms-length negotiations . . . and it finds that the early settlement of this dispute will avoid potentially lengthy and expensive litigation over what appears to be a modest amount of alleged damages."). In addition, had this case gone forward, Defendants would have likely disputed the propriety of final collective certification in this case. Lichten Decl. ¶ 17. Defendants would have also argued that they acted in good faith with regard to the classification of Plaintiffs and Settlement Collective Members, and that liquidated damages are not warranted. *Id.* ¶ 18. Thus, the Settlement Agreement reflects a reasonable compromise of disputed issues related to the merits as well as collective treatment of the Plaintiffs' and Settlement Collective Members' claims.

The Settlement also provides a significant recovery for Settlement Collective Members in this case. Settlement Agreement ¶ 1; Lichten Decl. ¶ 21. The Gross Settlement Amount represents approximately 62% of the Settlement Collective Members' estimated overtime damages, based on a detailed analysis of the maximum possible overtime damages for each of the Settlement Collective Members were they eventually successful at trial. *Id.* The average Settlement Award is $10,000, and the maximum award (excluding service award) is $14,964.00. Lichten Decl. ¶ 23. These are substantial amounts of compensation, and the settlement is an excellent result for the Settlement Collective Members in light of the likelihood that, should litigation go forward, the Collective Action members may recover nothing at all, or may face a significantly reduced recovery. *Id.* ¶ 16.

The formula for allocating settlement awards to the Settlement Collective Members is also fair and reasonable. The Settlement Agreement provides for a distribution formula where each

Settlement Collective Member will receive a per share award from the Net Settlement Amount, which will be allocated among Settlement Collective Members based on the number of overtime hours that they estimated that they worked for Defendants during the Relevant Time Period as a fraction of the estimated overtime hours worked by all Settlement Collective Members. *Id.* ¶ 22. Thus, those individuals who alleged they had worked more overtime hours for Defendants will receive more under the Settlement Agreement. *Id.*. Each Settlement Collective Member shall receive no less than a minimum Settlement Award of $1,231.61. *Id.* ¶ 23.

The scope of the release in the Settlement Agreement is also fair and reasonable. Settlement Collective Members agree to release the Releasees from and against any and all local, state, and federal claims, including but not limited to all wage and hour and wage payment claims, including claims under the Fair Labor Standards Act ("FLSA"), and all other federal, state, or local wage and hour laws and wage payment laws, that were or could have been raised in the Collective Action or which the Collective Members ever had against the Releasees at any time prior to the effective date of the Settlement Agreement. Settlement Agreement ¶ 3; Lichten Decl. ¶ 24. Additionally, the Collective Members agree to release Gardner alone from or against any and all claims that have been raised in *Sogbuyi-Whitney, et al. v. Caremark PHC LLC, et al.*, Civ. A. No. 1:23-cv-00055-MSM-LDA (D.R.I. filed Feb. 6, 2023), a separate case that alleges the CVS Defendants engaged in race discrimination in the execution of layoffs of QA consultants.  Settlement Agreement ¶ 4; Lichten Decl. ¶ 24.  Gardner is not named as a defendant in that action.  *Id.*

### C.    Certification of the FLSA Collective Pursuant to 29 U.S.C. § 216(b) is Appropriate for Settlement Purposes

This Court has already approved issuance of notice to the Settlement Collective Action Members who have opted into this case. For settlement purposes only, the Court should now grant final certification to the Settlement Collective. "At the second stage [following issuance of notice

and conditional certification in an FLSA collective action], the Court is tasked with making 'a factual determination as to whether there are similarly situated employees who have opted in.'" *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010) (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 n. 2 (5th Cir.2008)). "To make this determination, 'courts consider factors such as: 1) the disparate factual and employment settings — *e.g.*, whether plaintiffs were employed in the same corporate department, division, and location; 2) the various defenses available to defendant which appear to be individual to each plaintiff; and 3) fairness and procedural considerations.'" *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 67 (D. Mass. 2018) (quoting *Roberts v. TJX Cos.*, No. 13-cv-13142-ADB, 2017 WL 1217114, at *3 (D. Mass. Mar. 31, 2017)) (internal quotation marks omitted).

Plaintiff and the Settlement Collective Members in this case are similarly situated for settlement purposes, as they performed the same tasks, which generally consisted of assisting with the implementation and testing of Epic electronic medical recordkeeping (ERM) systems. Lichten Decl. ¶ 20. They worked similar schedules and were subject to the similar compensation policies and practices. *Id.* They were not paid time-and-a-half for hours worked in excess of forty a workweek. *Id.* In sum, Plaintiff has demonstrated the existence of a collective of similarly situated employees, such that collective certification of the collective sought herein is appropriate for settlement purposes. *Id.*

### D. The Proposed Service Payment to the Named Plaintiff is Fair and Reasonable

The settlement also provides for a service payment of $10,000 (i.e., $5,000 each) to Plaintiffs Cecilia Sogbuyi-Whitney and Annette Gabay, which is fair and reasonable. Lichten Decl. ¶¶ 26-28. Plaintiffs Sogbuyi-Whitney and Gabay took on the risk of stepping forward and bringing this case against Defendants on behalf of other Collective Members. *Id.* ¶ 26. Plaintiffs Sogbuyi-Whitney and Gabay provided their contracts and other documents relevant to their work with

Defendants and helped Plaintiffs' Counsel develop their theories of liability and damages models. They also provided significant assistance to Plaintiffs' Counsel as they drafted the Complaint, reviewed Defendants' document production, prepared the motion for conditional certification, and prepared a settlement demand. *Id.* ¶ 27. The incentive awards fairly recognize the services that they have performed in advancing the Settlement Collective Members' interests and the time that they both dedicated to this lawsuit. *Id.* ¶ 28.

Courts in this Circuit have routinely recognized the importance of such awards in wage and hour cases of this nature. *See Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017) (quoting *Bozak v. FedEx Ground Package Sys., Inc.,* No. 3:11–cv–00738–RNC, 2014 WL 3778211, at *4 (D. Conn. July 31, 2014)) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."). The court in *Lauture* recognized the significant "benefits of plaintiffs bringing wage and hour collective and class litigation because, without them, other employees may not assert their rights due to fears 'of retaliation or of being 'blackballed' in [their] industry,'" and approved a $15,000.00 incentive award to each class representative. *Lauture*, 2017 WL 6460244, at *2 (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011)). The service award requested in this case properly compensates Plaintiffs Sogbuyi-Whitney and Gabay for the risks they took on in coming forward to bring this case.

### E.    The Attorney's Fees and Costs Provision of the Settlement Agreement Fairly Compensates Plaintiff's Counsel for the Time and Expense of Litigating This Matter.

The Settlement Agreement further provides for the payment of Plaintiffs' attorneys' fees in the amount of $50,000.00 (one-third of the Gross Settlement Amount). Settlement Agreement

¶ 3(a). Plaintiffs' Counsel have collectively spent 166 hours advocating on behalf of Plaintiff and the Settlement Collective, for a combined lodestar of $52,950. Lichten Decl. ¶¶ 30-31. Plaintiffs' Counsel are also not separately seeking to recover their out-of-pocket costs, which currently total $933.82 and do not yet include costs associated with the administration of the settlement, and will pay for those costs out of their award for attorneys' fees. The requested award of $50,000.00 is therefore reasonable and should be approved.

Counsel's contingency fee agreement provides for recovery of fees equal to one-third of the gross recovery, so Plaintiff's Counsel's request is in line with their fee agreement. In fact, fee requests similar to the one made by Plaintiffs here have routinely been approved by courts, particularly in employment cases. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving attorneys' fees of one-third); *Scovil v. FedEx Ground Package Sys., Inc.*, 1:10-CV-515-DBH, 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) ("contingent fees of one-third are common" and "consistent with wage-and-hour settlements in the neighboring jurisdiction of Massachusetts"). Given Plaintiff's Counsel's substantial experience in wage and hour litigation,[4] and the result achieved for the Settlement Collective Members, this fee request is reasonable.

## V.    <u>CONCLUSION</u>

Because the Settlement reached by the Parties in this case is fair and reasonable, and meets the requirements for FLSA settlement approval, this Court should enter an Order:

1.  Granting final approval of the Parties' FLSA Collective Action Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act.

2.  Granting final certification to the Settlement Collective pursuant to 29 U.S.C. § 216(b),

---

[4]    Lichten & Liss-Riordan, one of the lead counsel firms for Plaintiff, has been lead or co-counsel in numerous wage and hour cases in the United States, and has successfully argued cases arising under state and federal wage laws before the before the Supreme Courts of Maine, Massachusetts, Hawaii, and New Jersey, and in the United States Court of Appeals for the First, Third, Seventh, Sixth, Eleventh and Ninth Circuits. *See generally* Lichten Decl. ¶¶ 3-7.

for settlement purposes only:

> Plaintiffs and the Opt-In Plaintiffs (*i.e.*, individuals who as of December 16, 2022 have filed an Opt-In Consent Form with the Court in *Sogbuyi-Whitney, et al. v. Gardner Resources Consulting, LLC, et al.*, No. 1:22-cv-10935 (D. Mass.)) (the "Settlement Collective").

3. Approving the Gross Settlement Amount of $150,000.00 in resolution of this action.

4. Approving the proposed service awards in the amount of $5,000.00 each to Plaintiffs Cecilia Sogbuyi-Whitney and Annette Gabay from the Gross Settlement Amount for their service to the Settlement Collective.

5. Approving Plaintiffs' unopposed request for attorneys' fees and costs, in the amount of $50,000.00, which is to be paid from the Gross Settlement Amount.

6. Dismissing this action with prejudice upon Court approval of the settlement.

7. Reserving exclusive and continuing jurisdiction over this action, the named Plaintiffs, and the Settlement Collective for purposes of supervising the implementation and enforcement of the Settlement Agreement, this Order, and all settlement administration matters.

Dated:  October 3, 2023                          Respectfully submitted,

/s/ *Harold Lichten*
Harold Lichten
Adelaide Pagano
Matthew Carrieri
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com
apagano@llrlaw.com
mcarrieri@llrlaw.com

*Attorneys for Plaintiffs*
*and the Collective*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 3, 2023, a copy of this document was served by electronic filing on all counsel of record.

/s/ *Harold Lichten*
Harold Lichten
